IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TITUS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAWN M. TITUS, APPELLANT.

Filed August 6, 2019.    No. A-18-1096.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Following a no contest plea, Shawn M. Titus was convicted in the district court for Sarpy County of attempted first degree sexual assault. He was sentenced to a term of 15 to 20 years' imprisonment. On appeal, Titus asserts that the district court imposed an excessive sentence and that he received ineffective assistance of trial counsel in several respects. We find no abuse of discretion in the sentence imposed. The record on direct appeal is insufficient to address Titus' various claims of ineffective assistance of trial counsel.

## II. BACKGROUND

Titus was originally charged by complaint with first degree sexual assault, a Class II felony. A preliminary hearing was held at which a police detective testified about his investigation of the alleged assault. The case was bound over to district court, after which Titus filed a plea in abatement. At the hearing on the plea in abatement, the court received into evidence the transcript

- 1 -

of the preliminary hearing to determine probable cause. The district court overruled the plea in abatement, finding that the evidence showed that the victim, A.M., was intoxicated to the point that she was incapable of resisting or appraising the nature of Titus' conduct. An information was then filed in district court again charging Titus with first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319(1)(a)(b) (Reissue 2016), a Class II felony. Thereafter, an amended information was filed charging Titus with attempted first degree sexual assault in violation of Neb. Rev. Stat. § 28-201(4)(b) (Cum. Supp. 2018), a Class IIA felony.

A plea hearing was held on August 6, 2018. At the outset, the district court stated it had been advised that there was a plea agreement reached in which the State filed the amended information reducing the charge in exchange for Titus' no contest plea. The court indicated that Titus' plea was an "Alford plea" or a "best interest plea." The court further stated that "there's going to be a recommendation from your attorney concerning bond, and it's the Court's belief, under those conditions, the State's not objecting to that. Is that your understanding of what we're doing here today?" Titus responded, "Yes." The district court proceeded to advise Titus of his various constitutional rights, and the rights that he would be giving up by entering a plea. The court asked Titus if he understood that the offense of attempted first degree sexual assault carried a potential penalty of up to 20 years' incarceration with no minimum penalty, to which Titus replied that he understood. The court then explained that it was not bound by any bond or sentencing recommendations or agreements, which are part of plea negotiations, and that the determination of the sentence was ultimately its decision. The court asked Titus if he understood this, and Titus responded affirmatively.

The State provided the following factual basis:

On May 13th, 2017 the victim, [A.M.], was working at LaVista Keno. She had gotten off earlier that night and decided to stay and drink with her friends, who were also working at LaVista Keno. That LaVista Keno is located in LaVista, Sarpy County, Nebraska.

That during the course of the night . . . as the victim was drinking, she later had contact with . . . Titus, who had come to the LaVista Keno. She remembers speaking with Titus after he arrived. She remembers buying him a drink and talking to him. However, the next thing she remembered was waking up in . . . Titus' house in his bed, and she was naked with a blanket on.

Other witnesses at LaVista Keno saw the defendant with [A.M.]. And the surveillance video showed at one point in time she was communicating with the defendant and another individual. When that individual left . . . [A.M.] tried to stand up from the chair. She had trouble standing up. She was clearly intoxicated. The defendant thereafter picked her up and carried her out of LaVista Keno without talking to anybody.

It should be noted that prior to that the victim had arranged to get a ride home from LaVista Keno from one of the individuals that was working that night. She had communicated that to . . . Titus, as well as other people. . . . Despite the fact that he knew she had a ride home that night, he decided to pick her up and carry her out of the LaVista Keno. He placed her in his car, and he drove her to his house.

Prior . . . to getting to the house, he stopped at the gas station on 72nd and Harrison, at which time one of [A.M.'s] coworkers who was at LaVista Keno earlier, noticed she was in the car that the defendant was driving. She noticed that [A.M.] was passed out in the vehicle, and she was not awake or conscious. She knew -- that coworker thereafter talked to . . . Titus and told him that [A.M.] had a ride home at LaVista Keno, and she needed to go back there because [A.M.] had a ride home. He indicated he was going to take her home and take care of her, that he's taken care of drunk girls before. Thereafter he took her to his house. And, as I indicated previously, she woke up in his bed, naked with her clothes off.

She did not at that point when she woke up she did not know what happened that night. She was completely unconscious and passed out. It wasn't until later the next day that she learned from the defendant that -- that in talking to him he indicated to her that they had had sex the night of May 13th, the early morning of May 14th, 2017. She did not consent to any sexual contact, sexual penetration. He indicated that there was penetration. She did not consent to any penetration. She was not in a state where she could have consented to penetration, and he knew that because she was unconscious at the time he took her into the house given how -- her state she was in in the vehicle, and the fact that had he to carry her out of the LaVista Keno and the fact that she doesn't remember anything from the time she left LaVista Keno to when she woke up the next morning.

It should be noted for the purpose of the factual basis the defendant did penetrate her by sticking his penis in her vagina without her consent as indicated, or when she was in a condition intoxicated as she was that she was unable to consent or apprise herself of the nature of her conduct.

That occurred at [a particular address]. All those events occurred in Sarpy County, Nebraska.

Titus' trial counsel, noting that this was an Alford plea, indicated that Titus did not agree with the factual basis but understood that this was a best interest plea. Counsel further deferred to the presentence investigation (PSI) for additional relevant information to address the factual basis. The district court again recognized that this was an Alford plea, and that Titus did not agree with the State's presentation of the factual basis but was taking advantage of a plea agreement.

The district court then accepted Titus' plea of no contest, found him guilty of attempted first degree sexual assault, and set the matter for sentencing. The court also accepted the bond reduction agreement and modified the bond in order to allow pretrial release. Subsequently, Titus was sentenced to 15 to 20 years' imprisonment with credit for 262 days served.

Titus filed this timely appeal with new counsel.

### III. ASSIGNMENTS OF ERROR

Titus assigns, reordered, that his trial counsel was ineffective and that the district court imposed an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. S*tate v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Cerritos-Valdez*, 295 Neb. 563, 889 N.W.2d 605 (2017). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Titus is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show

that his or her trial counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017). A reasonable probability is a probability sufficient to undermine confidence in the outcome. S*tate v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018).

Titus alleges that his trial counsel was ineffective by: (a) failing to obtain or consult with an expert witness; (b) failing to develop and martial a proper defense strategy; (c) failing to request recusal of the trial judge and prosecutor because of the pendency of Titus' federal court lawsuit in which both were named as defendants; (d) failing to place the entire plea agreement upon the record; (e) advising Titus to accept the plea offered; and (f) failing to advise Titus that acceptance of the plea negated his ability to appeal the denial of his plea in abatement.

### (a) Failure to Obtain or Consult With Expert Witness

Titus alleges that trial counsel was ineffective for failing to consult with or obtain an expert witness to rebut any presumption that A.M. was intoxicated to the point that she was not capable of consent and/or mentally or physically incapable of resisting or appraising the nature of her conduct. Titus claims that such an expert could include a psychiatrist qualified on the effects of intoxication or other forensic scientist. Titus asserts that these individuals would be able to testify as to blood alcohol levels, blackouts, and the retrograde calculations of blood alcohol levels.

The record on appeal does not contain any information to indicate whether trial counsel consulted with potential expert witnesses or why trial counsel did not pursue such an avenue. The State suggests that the record on appeal is insufficient to address this claim of ineffective assistance of counsel, and we agree.

### (b) Failure to Develop and Martial Proper Defense Strategy

Titus asserts that the crux of the State's evidence was that A.M. was not capable of consent at the time of the sexual encounter between her and Titus. Titus argues that trial counsel failed to investigate or mount any defense that A.M. did, in fact, consent to having sex with Titus and was at all times capable of consenting and knew the nature of her conduct.

Titus also claims that trial counsel failed to interview several witnesses, who were either with or observed A.M. on the evening in question, or communicated with her about the events shortly after the sexual encounter between Titus and A.M. Titus named each of the witnesses in question.

The record on appeal does not contain any information about whether trial counsel contacted the witnesses identified by Titus; if contact was made, what was learned from the witnesses; or if contact was not made, counsel's reason for not making contact. As such, the record is insufficient to review this claim of ineffective assistance of counsel.

### (c) Failure to Request Recusal of Trial Judge and Disqualification of Prosecutor

Titus asserts that his trial counsel was aware that on September 5, 2018, Titus had filed an action in the United States District Court for the District of Nebraska, at Case No. 8:18-CV417, in which the district judge, who sentenced Titus in this case on November 5, and the prosecutor handling this case were named as defendants. Titus argues that his trial counsel was ineffective in failing to request recusal of the district judge and the disqualification of the prosecutor at the time of sentencing as there was a direct conflict or the appearance of impropriety.

The record does not contain information regarding whether trial counsel was aware of the federal court lawsuit, the specific nature of the lawsuit and allegations against the trial judge and prosecutor, or the nature of any communication between Titus and his trial counsel regarding the lawsuit, if any. The record is insufficient to address this claim on direct appeal.

### (d) Failure to Place Plea Agreement Upon Record

Titus asserts that at the time of the entry of his plea, there was no recitation of the plea agreement by his trial counsel or the prosecutor. Titus claims that the plea recitation by the trial judge was not the entire agreement and that the State was to stand silent at sentencing, which it failed to do, thereby violating the plea agreement.

If there was an agreement by the State to stand silent at sentencing, such is not contained in the record on appeal. The record is insufficient to address this claim.

### (e) Advising Titus to Accept Plea

Titus argues that given the lack of evidence of a crime, the lack of effort by his trial counsel to develop and martial a proper defense strategy, the failure to interview witnesses, and the failure to consult with or retain an expert, trial counsel was ineffective to advise Titus to accept this plea. Titus notes that the trial court did not inquire if Titus believed that his trial counsel was competent, if he believed trial counsel knew what he was doing, or if Titus was satisfied with the job his attorney had done.

Because we have found the record for the previous claims to be insufficient to review on direct appeal, which claims Titus argues cumulatively rendered trial counsel's advice to accept the plea ineffective, we are likewise unable to review this claim on appeal. Further, there is nothing in the record to indicate what conversations were had between Titus and his trial counsel regarding acceptance of the plea agreement. We are unable to review this claim on direct appeal.

### (f) Failure to Advise Acceptance of Plea Negated Ability to Appeal Denial of Plea in Abatement

Titus argues that trial counsel failed to inform him that the voluntary entry of his no contest plea would waive every defense to the charge, whether the defense is procedural, statutory or

constitutional. Titus claims that when he entered his plea, he unknowingly waived any alleged defects in his plea in abatement and as such, he cannot challenge the denial of his plea in abatement on appeal. Titus asserts that this is directly contrary to what he had been advised by his trial counsel when he entered his plea and formed an inducement for entry of his plea, making his plea not freely and knowingly made.

Again, the record does not contain any information on what discussion Titus and his trial counsel had regarding the plea agreement and its effect upon the appeal of the plea in abatement. We are unable to review this claim on direct appeal.

### 2. EXCESSIVE SENTENCE

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017). An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *Id*. In considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors; the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *Id*. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017).

Titus was convicted of a Class IIA felony, which is punishable by up to 20 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2018). There is no minimum sentence. Titus asserts in his brief that the crime already carried a heavy sentence. He asserts that given the lack of serious criminal history, "if anyone deserved to receive the minimum, it would be him." Brief for appellant at 12. He further argues that neither the gravity of the offense, nor the protection of the public merit a sentence beyond the mandatory minimum. We disregard Titus' argument with regard to any mandatory minimum sentence.

At sentencing, Titus' counsel, in light of the Alford plea, pointed to Titus' statements contained in the PSI that he was attempting to take care of the intoxicated victim by giving her a ride to his apartment and the sexual encounter which occurred hours later was consensual. He points to his honesty in advising the victim that they had a sexual encounter when she later communicated to him that she could not remember anything between being in the bar and waking up at Titus' apartment. Titus' counsel asked for a sentence of probation or of time served with postrelease supervision. In his brief, Titus further points to the testing scores which show he is not likely to reoffend. Finally, he argues that a lengthy sentence is not necessary for rehabilitative purposes since he has no chemical dependencies, has maintained employment, and has avoided serious criminal trouble.

The PSI reveals that at the time of sentencing, Titus was 37 years old, had been employed full time in construction, was single, and had no dependents. Titus' criminal history includes convictions for driving under the influence of alcohol (four convictions), trespassing, criminal mischief, supply alcohol to minor, public intoxication, interfere with official acts, disorderly conduct, contempt willful disturbance interference, fugitive from justice, and numerous traffic violations. Titus scored in the moderate low risk category on the Vermont Assessment for Sex Offender Risk-2, the low risk category on the Sex Offender Treatment Intervention and Progress Scale, and in the medium low risk range to reoffend on the overall "LS/CMI" assessment.

At sentencing, the district court indicated that it had reviewed the PSI and stated at length its reason for ordering Titus' sentence. The court reviewed the facts from the evening of the offense, including that the victim was clearly intoxicated in the security tape, that Titus physically removed her from the bar by picking her up and putting her over his shoulder, and that Titus' story was inconsistent with that of others and what was observed in the security footage. The district court properly considered the statutory sentencing factors and we can find no abuse of discretion in the sentence imposed.

## VI. CONCLUSION

The sentence imposed by the district court was not an abuse of discretion. The record on appeal is insufficient to address all of Titus' claims of ineffective assistance of trial counsel.

AFFIRMED.